UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BORMUTH,

          Plaintiff,                       Case No. 2:20-cv-11399

                                         District Judge Mark A. Goldsmith

v.                                  Magistrate Judge Anthony P. Patti

GRETCHEN WHITMER,

          Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S JUNE 24, 2020 MOTION TO DISMISS (ECF No. 22)

**I.**     **RECOMMENDATION:** The Court should **GRANT** Defendant's June 24, 2020 motion to dismiss (ECF No. 22), because Plaintiff's claims are not justiciable.

**II.**     **REPORT:**

    **A.**     **Background**

As a result of the COVID-19 pandemic, Governor Gretchen Whitmer issued several executive orders, beginning with the declaration of a state of emergency on March 10, 2020. *See* www.michigan.gov (EO 2020-04; *see also* EOs 2020-67, 2020-99, 2020-105, 2020-127, 2020-151, 2020-165 and 2020-177.)

          **1.**     **"Stay home, stay safe" executive orders (March – May 2020)**

At issue in this case are Executive Orders that temporarily suspended "activities that are not necessary to sustain or protect life."  EOs 2020-21, 2020-42, 2020-59, 2020-70, 2020-77, 2020-92 and 2020-96.  The earliest of these orders became effective on March 24, 2020 and provided, in part, that:

> Nothing in this order should be taken to supersede another executive order or directive that is in effect, except to the extent this order imposes more stringent limitations on in-person work, activities, and interactions. Consistent with prior guidance, a *place of religious worship*, when used for religious worship, is not subject to penalty under section 14.

EO 2020-21 ¶ 10 (emphasis added).  The latest of these orders, entered on May 21, 2020, provided, *inter alia*, that:

> Except as otherwise expressly stated in this order, nothing in this order should be taken to supersede another executive order or directive that is in effect, except to the extent this order imposes more stringent limitations on in-person work, activities, and interactions. Consistent with prior guidance, *neither a place of religious worship nor its owner* is subject to penalty under section 22 of this order for allowing religious worship at such place. No individual is subject to penalty under section 22 of this order for engaging in <u>or traveling to engage</u> in religious worship at a *place of religious worship*, or for violating section 15(a) of this order.

EO 2020-96, ¶ 16 (emphases added).  Section 14 of EO 2020-21 and subsequently Section 22 of EO 2020-96 read as follows:  "Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor."  On May 22, 2020, Governor Whitmer clarified that EO 2020-96 was extended until 11:59 pm on June 12, 2020.  *See* <u>www.michigan.gov</u>, EO 2020-100.

## 2.    "Safe start" executive orders (June – October 2020)

On June 1, 2020, Governor Whitmer issued EO 2020-110, which set forth

"Temporary restrictions on certain events, gatherings, and businesses" and, among

other things, rescinded EO 2020-96.  Still, EO 2020-110 provided:

> Consistent with prior guidance, *neither a place of religious worship nor its owner* is subject to penalty under section 19 of this order for allowing religious worship at such place. No individual is subject to penalty under section 19 of this order for engaging in religious worship at a *place of religious worship*, or for violating the face covering requirement of section 4(b) of this order.

EO 2020-110 ¶ 16 (emphases added).  Section 19 of that order reiterated:

"Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order

is a misdemeanor."  Shortly thereafter, on June 5, 2020, Governor Whitmer entered

a similarly-titled executive order, Section 7 of which sets forth "Rules on

Gatherings, Performances, and Events," including theatres, and Section 12 of

which is similar to EO 2020-110's religious worship section.  *See* EO 2020-115.

Effective July 31, 2020, the Governor issued an amended safe start order.

EO 2020-160,[1] which was rescinded effective September 4, 2020 by way of a new

safe start order, EO 2020-176.[2]  EO 2020-176 contains a "religious worship"

---

[1] *See also* EO 2020-162 ("Amendment to Executive Order 2020-160").

[2] *See also* EO 2020-180 ("Amendment to the Safe Start order"), EO 2020-181 ("Amendment to the Safe Start order").

section, which provides:

> Consistent with prior guidance, neither a *place of religious worship* nor its owner is subject to penalty under section 18 of this order for allowing religious worship at such place. No individual is subject to penalty under section 18 of this order for engaging in religious worship at a *place of religious worship*.

EO 2020-176 ¶ 14 (emphases added).  Section 18 of that order stated:  "Consistent with MCL 10.33 and MCL 30.405(3), willful violation of this order is a misdemeanor."

EO 2020-176 was rescinded effective October 9, 2020.  EO 2020-183. Although the superseding safe start Executive Order included an identical decriminalization section, it also, *inter alia*, "relaxes the restrictions on attendance at social gatherings and organized events," and permitted "a new set of previously closed business[es] to come back to return with safety precautions, including theaters and cinemas, other performance venues, and a wide variety of recreational facilities."  *Id*.

### 3.    The Michigan Supreme Court's decision (October 2020)

Importantly, on October 2, 2020, in a case unrelated to the instant matter and on a certified question from the Western District of Michigan, the Michigan Supreme Court determined that: (1) "the Governor did not possess the authority under the Emergency Management Act of 1976 (the EMA), MCL 30.401 *et seq*., to declare a 'state of emergency' or 'state of disaster' based on the COVID-19

pandemic after April 30, 2020;" and, (2) "the Governor does not possess the authority to exercise emergency powers under the Emergency Powers of the Governor Act of 1945 (the EPGA), MCL 10.31 *et seq*., because that act is an unlawful delegation of legislative power to the executive branch in violation of the Michigan Constitution." *In re Certified Questions From United States Dist. Court, W. Dist. of Michigan, S. Div.*, No. 161492, 2020 WL 5877599, *3 (Mich. Oct. 2, 2020).

On October 12, 2020, the Michigan Supreme Court denied the Governor's motion to stay the October 2nd decision. *In re Certified Questions from United States District Court*, 949 N.W.2d 274 (Mich. 2020) (Mem). Thus, it is clear that the Michigan Supreme Court's October 2nd decision has already taken effect and that Governor Whitmer's COVID-19 executive orders are no longer in force.

**B.    The Operative Pleading**

On May 18, 2020 – while a "stay home, stay safe" order was in effect but before the "safe start" orders were issued – Peter Bormuth initiated this lawsuit against Governor Whitmer, in one paragraph referring to her as "Little Gretch," and alleging, *inter alia*, that her executive orders "pander[] to christian ministers who want their collection plates and churches full." (ECF No. 1, ¶ 9.)[3]  Plaintiff

---

[3] Plaintiff is or has been a party to other matters in this court. *See*, *e.g.*, *Bormuth v. Dahlem Conservancy et al.*, Case No. 2:11-cv-11354-GCS-MAR (E.D. Mich.) (U.S. Supreme Court denied petition for writ of certiorari, Mar. 19, 2013);

identifies himself as a "non-christian individual," and "a Pagan Druid[.]"  (ECF

No. 1, PageID.2, ¶ 1; ECF No. 27, PageID.697, ¶ 1.)

     The currently operative pleading is Plaintiff's June 29, 2020 third amended

complaint, which was filed amidst the now-defunct "safe start" executive orders

and which challenges Section 16 of the now-defunct "stay home, stay safe" EO

2020-77 as "favor[ing] the christian religion[,]" although – as set forth above – the

Court notes that similar sections appear in subsequent executive orders.  (ECF No.

27, ¶ 49.)  He characterizes "[o]rganized christian religion" as "a business with the

popes, bishops, and ministers as CEO's and salesmen[,]" and churches as

"businesses selling . . . an illusion of comfort in the face of the inevitable reality of

death[,]" with "unpleasant patriarchal morality[,]" and he complains of the "almost

one metric ton[] of gold owned by the Holy See."  (ECF No. 27, ¶ 50.)   Of

particular note is Plaintiff's assertion that "[c]hurches have been central vectors for

the spread of COVID-19."  (ECF No. 27, ¶ 26; *see also id.*, ¶¶ 27-36.)  At the heart

of his claims is the umbrage he expresses against the decriminalization of

---

*Bormuth v. Jackson, City of et al.*, Case No. 2:12-cv-11235-RHC-LJM (E.D. Mich.) (stipulated order dismissing case, Sept. 26, 2013); *Bormuth v. County of Jackson*, Case No. 2:13-cv-13726-MOB-MJH (E.D. Mich.) (U.S. Supreme Court denied petition for writ of certiorari, July 2, 2018); *Bormuth v. Johnson et al.*, Case No. 2:16-cv-13166-NGE-DRG (E.D. Mich.) (6th Circuit affirmed district court's dismissal of the complaint, Mar. 2, 2018); and, *Bormuth v. City of Jackson et al.*, Case No. 2:20-cv-11923-LJM-APP (E.D. Mich.) (remanded to state court on August 25-26, 2020).

"engaging in or traveling to engage in religious worship at a place of religious worship," as expressed in section 16 of EO 2020-77 or 2020-96.  According to Plaintiff's pleadings, and notwithstanding the facially neutral language contained in Section 16, "[t]his is just another attempt by christians to evade neutral government laws of general application."  (ECF No. 27, ¶ 51.)

Plaintiff's causes of action are based upon alleged violations of the Establishment Clause (U.S. Const. amend. I), the Equal Protection Clause (U.S. Const. amend. XIV), and the state constitution's freedom of worship and religious belief section (Mich. Const. Art. 1, § 4).  (ECF No. 27, ¶¶ 46-66.)  He seeks declaratory and injunctive relief with respect to Section 16 of EO 2020-77, as well as "costs, expenses, and nominal damages."  (*Id*., PageID.710.)

## C.    Pending Motions

Judge Goldsmith has referred this case to me for pretrial matters.  (ECF No. 10.)   Currently before the Court is Governor Whitmer's June 24, 2020 motion to dismiss, which argues that "Plaintiff's claims are not justiciable[,]" and that "Plaintiff fails to plead a constitutional violation."  (ECF No. 22, PageID.478-495.) Plaintiff filed a response on July 17, 2020, and Defendant filed a reply on July 31, 2020.  (ECF Nos. 29, 30).[4]

---

[4] Plaintiff has moved to supplement his reply (ECF Nos. 24, 28) and/or his response (ECF No. 29).  (*See* ECF Nos. 31-35.)  These matters have been addressed under separate cover.  (ECF No. 40.)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[5]

## D.    Discussion

### 1.    Whether Plaintiff's claims are justiciable?

Defendant argues that Plaintiff's claims are not justiciable.  "In assessing

whether a claim is justiciable, courts look to several doctrines, including standing,

mootness, ripeness, and political question."  *In re Rosenfeld*, 558 B.R. 825, 828

(E.D. Mich. 2016) (Battani, J.), *aff'd*, 698 F. App'x 300 (6th Cir. 2017) (citing

*Allen v. Wright*, 468 U.S. 737, 750 (1984)).  Defendant's justiciability argument is

based on three of these doctrines (ECF No. 22, PageID.478-488).  The Court need

only address two.

#### a.    Mootness

##### i.    Mootness based on the Governor's orders

---

[5] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL
2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's
failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic
pleading requirements, including Rule 12(b)(6).").

In her June 24, 2020 motion to dismiss, Defendant argues that Plaintiff's claims are moot, because EO 2020-77 "has been superseded multiple times by subsequent orders." (ECF No. 22, PageID.484.) However, as noted above, subsequent executive orders – *e.g.*, EO 2020-110 ¶ 16, EO 2020-115 ¶ 12, and EO 2020-176 ¶ 14 – contain the same or similar provisions as EO 2020-77 ¶ 16, which Plaintiff challenges. Moreover, even if this provision was no longer in effect, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). In Plaintiff's words, "the behavior by the Governor is reasonably expected to repeat if she is forced to declare another emergency during a 'second wave' of the virus." (ECF No. 29, PageID.837.)

However, albeit not by way of the Governor's "voluntary cessation," the landscape of this case changed when the Michigan Supreme Court entered its order in *In re Certified Questions From United States Dist. Court, W. Dist. of Michigan, S. Div.*, No. 161492, 2020 WL 5877599 (Mich. Oct. 2, 2020). This case effectively invalidated the Governor's executive orders that took effect after April 30, 2020, such as the May 7, 2020 EO 2020-77 on which this lawsuit is based. Therefore, on October 9, 2020, I entered a text-only order requiring Plaintiff and Defendant each to show cause as to:

(1)     why Plaintiff's case should not be dismissed as moot in light of
        the Michigan Supreme Court's October 2nd opinion; and,

(2)     why mootness is not cured by Paragraph 6(d) the MDHHS
        [Michigan Department of Health and Human Services]
        Director's October 5, 2020 Emergency Order Under MCL
        333.2253 ("Gathering Prohibition and Mask Order").

To be sure, the MDHHS October 5th order was rescinded by an October 9th

MDHHS "Gathering Prohibition and Face Covering Order," which was then

rescinded by an October 29th MDHHS "Gatherings and Face Mask Order," which

itself was rescinded by a November 18th MDHHS Emergency Order under MCL

333.2253 ("Gatherings and Face Mask Order") that is to remain in effect through

December 8th  *See* https://www.michigan.gov/coronavirus/0,9753,7-406-

98178_98455-533660--,00.html.

Preliminarily, as the Governor notes, "there is simply nothing of [her

Executive Orders] left to enjoin[,]" (ECF No. 37, PageID.1017), or, as stated in my

recent report and recommendation to deny as moot Plaintiff's motion for

temporary restraining order (TRO) and emergency injunction (ECF No. 8), "this

Court need not restrain application of an order that that Michigan Supreme Court

has already negated[,]" (ECF No. 39, PageID.1033).  Nonetheless, Plaintiff

correctly notes that the Michigan Supreme Court did not invalidate Michigan's

Emergency Management Act of 1976, Mich. Comp. Laws §§ 30.401, *et seq*.; thus,

it "would govern future emergency declarations."  (ECF No. 36, PageID.1009.)

However, while Plaintiff asserts that Governor Whitmer's behavior is "reasonably expected to repeat if she is forced to declare another emergency during a 'second wave' of the virus[,]" (ECF No. 29, PageID.837), Plaintiff's concerns about a new emergency "are well beyond the scope of this case, and whether they might come to pass and cognizably aggrieve Plaintiff at some point in the future is a matter of, at best, pure speculation, not 'reasonable expectation.'" (ECF 37, PageID.1018-1019.) *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (on the issue of reasonable expectation, "[w]hile petitioners will continue to administer the North Carolina parole system with respect to those who at any given moment are subject to their jurisdiction, there is no demonstrated probability that respondent will again be among that number."). The same rationale applies to Plaintiff's other "repeatability" arguments – that "Short Term Issues That Evade Review, But Repeat, Are Not Mootable[,]" (ECF No. 36, PageID.1010-1011), or that "The Governor's Actions Are Capable of Repetition[,]" (ECF No. 36, PageID.1011-1012).

To be sure, Plaintiff supports his "reasonable expectation" argument with, *inter alia*, a citation to the October 29th *MDHHS Epidemic Order* and the assertion that "[s]tay-at-home orders may reasonably follow." (ECF No. 38, PageID.1029). The Governor maintains that "Plaintiff has offered nothing to show how he is being aggrieved by the Director's orders such that he can meet the standing and

ripeness requirements necessary for there to be a justiciable controversy before this Court." (ECF No. 37, PageID.1019-1020.)[6] Whether this is true or not, as discussed further below, Plaintiff is not suing MDHHS Director Gordon, and the MDHHS order issued under different statutory authority is not the subject of Plaintiff's operative pleading. Following the Michigan Supreme Court's ruling, at least where *Defendant Whitmer* is concerned, Governor Whitmer's actions are not matters "capable of repetition," (ECF No. 36, PageID.1011-1012), nor is there "a reasonable expectation that [Plaintiff Bormuth] would be subjected to the same action again[,]" *Weinstein*, 423 U.S. at 149, "such that this Court's review might still be warranted." (ECF No. 37, PageID.1017-1019.)

Moreover, the Governor's case law citations regarding prospective relief support this conclusion. (ECF No. 37, PageID.1017-1018 n.2.) Plaintiff "[is] not entitled to prospective injunctive or declaratory relief because the executive orders that underlie their complaint have been rescinded[,]" or, as in the present case,

---

[6] Specifically, the Governor contends that "the Epidemic Order currently in effect does not prohibit any of these activities, instead providing certain safety protocols for yoga studios, tattoo parlors, outdoor events, and theaters." (ECF No. 37, PageID.1020 n.3.) In so doing, the Governor cites various sections of the October 29, 2020 MDHHS Epidemic Order that concern general capacity limitations at gatherings (¶ 2), gathering restrictions for particular types of facilities (¶ 3), face mask requirement at gatherings (¶ 6), and contact tracing requirements for particular gatherings (¶ 8). Even if the wording is somewhat different, there are similarly titled sections – ¶¶ 2, 3, 7 and 9 – in the November 18th MDHHS order. *See* https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-545136--,00.html (last visited Nov. 20, 2020).

deemed invalid.  *Martinko v. Whitmer*, 465 F. Supp. 3d 774, 777 (E.D. Mich. June

5, 2020) (Friedman, J.).  *See also Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir.

June 18, 2020) ("it is speculative, at best, that the Governor might reimpose the

ten-person restriction or a similar one."), *Cameron v. Beshear*, No. 3:20-CV-

00023-GFVT, 2020 WL 2573463, at *2 (E.D. Ky. May 21, 2020) ("In the unlikely

event the restraint on travel is reinstated, the Court will address any constitutional

challenge promptly, as it has done with respect to every other constitutional

challenge levied against one of Governor Beshear's executive orders.").

### ii.    Mootness not cured by MDHHS order

Finally, to the extent Plaintiff argues that "Paragraph 6(d) of the MDHHS

Director's October 5, 2020 Emergency Order Under MCL 333.2253 Cures Any

Claim of Mootness[,]" (ECF No. 36, PageID.1012-1013), Defendant Whitmer puts

it well:

> While Paragraph 6(d) of the Director's order is similarly worded to
> the provision Plaintiff has challenged in Defendant's E.O. 2020-77, it
> is a part of a different order, with different terms, issued by a different
> state official, pursuant to a distinct and independent source of
> statutory authority.  Plaintiff has not sued Director Gordon and has not
> brought claims against any of the Director's orders; he has sued the
> Governor on the basis of her executive orders[.]

(ECF No. 37, PageID.1019.)  Stated otherwise, and even acknowledging that suits

against state officials in their official capacities are akin to suits against the State,

the Court cannot take action against a person or party not currently before it – in

this case MDHHS Director Gordon – with respect to his action that is not the subject of the operative pleading – here an MDHHS Emergency Order under Mich. Comp. Laws § 333.2253. *See also Election Integrity Fund v. Whitmer*, No. 1:20-CV-805, 2020 WL 6605988, at *1 (W.D. Mich. Oct. 5, 2020) (in an order dismissing motion for preliminary injunction as moot on the basis of *In re Certified Questions*, *supra*., "[t]his lawsuit . . . challenges only the executive orders, and not other sources of enforcement. And, Plaintiffs name only Gretchen Whitmer as a defendant.").

Relief must be sought against the proper public official; otherwise, Plaintiff could name *any* public official – say the Director of the Department of Corrections or a Regent of the University of Michigan – to answer, or be subject to enjoinder, for the actions of a governmental department over which he or she has no authority or for the exercise of authority which is statutorily placed in other hands. This cannot be so. The statute under which the current emergency order has been promulgated makes clear that it is "the director" of the Michigan Department of Health and Human Services who "determines that control of an epidemic is necessary to protect the public health," and it is "the director [who] by emergency order may prohibit the gathering of people for any purpose and may establish procedures to be followed during the epidemic . . . ." Mich. Comp. Laws § 333.2253(1). The plain language of the statute gives no authority to the Governor;

thus, any appropriate injunctive relief could only be rendered against Director

Gordon. *See S.B.S. Builders, Inc. v. City of Madison Heights*, 175 N.W.2d 798,

800 (Mich. App. 1970) (city building inspector was a necessary party defendant to

an action for writ of mandamus to compel city to issue building permits where,

under city's zoning ordinance, building permits were issued by building inspector).

Nor is the Governor properly named as a party in challenging the current

pandemic-related restrictions on the basis of her general authority to enforce laws.

*Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015) ("'General

authority to enforce the laws of the state is not sufficient to make government

officials the proper parties to litigation challenging the law.'") (*quoting 1st Westco

Corp v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (6th Cir. 1993)). To succeed in a 42

U.S.C. § 1983 action attacking the current, MDHHS restrictions, Plaintiff would

have to set forth facts demonstrating that his deprivation of rights was "caused by a

person acting under the color of state law." *Sigley v. City of Parma Heights*, 437

F.3d 527, 533 (6th Cir. 2006) (citing cases). Any unconstitutional deprivation of

rights under Mich. Comp. Laws § 333.2253(1) would necessarily be caused by the

sole state official authorized to act – namely Director Gordon, *not* Governor

Whitmer. *See also NCO Acquisition, LLC v. Snyder*, Case. No. 12-10122, 2012

WL 2072668 (E.D. Mich. June 8, 2012) (Cleland, J.) (Governor Snyder not a

proper party solely because he appointed emergency manager or simply because he had constitutional duty to enforce Michigan laws).[7]

For these reasons, Plaintiff's claims related to the period after April 30, 2020 are moot.

### b.    Standing

The Court must still address Plaintiff's supplemental argument that, "[d]uring the period from March 16, 2020 to April 30, 2020[,] [he] suffered irreparable harm and his First Amendment / Equal Protection rights were violated due to the Governor's Emergency Orders, which exempted places of religious worship and their owners[,]" (ECF No. 36, PageID.1009).  Plaintiff's use of a period beginning March 16, 2020 appears related to the Governor's issuance of EO 2020-11 ("Temporary prohibition on large assemblages and events, temporary school closures ").  (ECF No. 36, PageID.1009 n.1.)

This argument is problematic.  Although it invokes his federal constitutional claims (Counts I & II), <u>EO 2020-11 did not contain a section like the one at issue in the operative pleading</u>.  Also, based on the Michigan Supreme Court's order,

---

[7] Consistently, Michigan law on "Capacity to sue or be sued" provides that "an officer of the state or any such unit shall be sued in his official capacity for the purpose of enforcing the performance *by him* of an official duty."  Mich. Comp. Laws § 600.2051(4) (emphasis added).  Statutes enacted in connection with the creation of the MDHHS similarly provide for the new department's Director to be substituted as the proper party in lawsuits against the predecessor entities' Directors.  Mich. Comp. Laws §§ 400.227(II)(I) and 400.561(IV)(B).

March 16th to April 30th is a period of time during which Governor Whitmer was permissibly acting under Michigan's EMA.  Thus, to get past the mootness issue addressed above, the Court would need to assume that Plaintiff is contesting the religious worship section of an order, such as Section 10 EO 2020-21 (effective March 24, 2020), which became effective during that period, *i.e.*, not EO 2020-77, which is dated May 7, 2020 and mentioned in the original and currently operative pleadings (ECF No. 1, PageID.13; ECF No. 27, PageID.710).  Additionally, beyond the fact that the Court cannot enjoin or restrain application of an order that the Michigan Supreme Court has already invalidated, Plaintiff "[is] not entitled to damages or retrospective injunctive or declaratory relief because defendant enjoys Eleventh Amendment immunity."  *Martinko*, 465 F. Supp. 3d at 777.

Even working past these problems, there is the Governor's dispositive argument that that Plaintiff "lacks standing to bring his claims."  (ECF No. 22, PageID.478.)  "[T]he irreducible constitutional minimum of standing contains three elements[:]

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . ; and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal citations and footnote omitted).

### i.     Plaintiff's alleged injuries

Plaintiff's alleged injuries from EO 2020-77 are of two types.  First, he alleges the possibility of exposure to infection "by a christian individual who attended [M]ass or other church services . . . ."  (*See* ECF No. 27, ¶¶ 37-39.) Plaintiff contends that his injury "is *potentially* imm[i]nent with the reopening of churches for in-person services."  (ECF No. 27, ¶ 40 (emphasis added).)  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.") (internal quotations and citation omitted).  Second, he alleges that EO 2020-77 prevents him from gathering "in community" at the Nightlight Bar, attending Yoga classes "for his physical and spiritual health" in the Samadhi Yoga Studio, having his play produced and performed at the Michigan Theatre (considering that "[f]or Pagans, theatre retains its sacred religious character"), getting a religious tattoo at Karma Knife Tattoo

(considering that "[t]attooing is a religious activity for Pagans"), and "holding outdoor religious gatherings on the Pagan holidays . . . ."[8]  (ECF No. 27, ¶¶ 41-45.)

Plaintiff also makes the following factual allegations with respect to his claimed injury and standing:

> 37.    There is only one grocery store on the east side of the City of Jackson (where many Catholics live), a Meijer[] where the Plaintiff shops. The Plaintiff may be exposed to COVID-19 while shopping by a christian individual who attended mass or other church services under Governor Whitmer's EO 2020-77.

> 38.    The Plaintiff uses public transportation (The Jackson Area Transportation Authority or JATA) and may be exposed to infection by a christian individual who attended mass or other church services while riding the bus.

> 39.    The Plaintiff must go out in public to perform essential activities. Under Governor Whitmer's EO 2020-77, the plaintiff may be exposed to infection by people who have attended church services.

(ECF No. 27, PageID.703, ¶¶ 37-39.)

However, Plaintiff's allegations that he *may* be "exposed to COVID-19" or "exposed to infection" by a churchgoer while shopping at his local Meijer or using JATA or going "out in public to perform essential activities[,]" (ECF No. 27, ¶¶ 37-40), are conjectural and hypothetical, as opposed to actual or imminent.  *Lujan*, 504 U.S. at 560-561.  As the Governor points out, "Plaintiff asks the Court to

---

[8] Plaintiff contends that "Pagans have 8 sacred calendar days (Spring Equinox, May Day, Summer Solstice, Lughnasa, Autumn Equinox, Halloween, Winter Solstice, and Bridget's Day (February 1)."  (ECF No. 29, PageID.838 n.6.)

assume that . . . [he] will happen to come into contact with a congregant who contracted COVID-19 *at a place of worship* and be in close enough contact that Plaintiff is infected."  (ECF No. 22, PageID.479-481 (emphasis added).)  But, notwithstanding articles that he attaches from various places in the country on the subject of the virus being spread in churches (*see*, *e.g.*, ECF No. 27, PageID.734-772), the Court cannot ignore that Plaintiff may become infected in countless other ways, such as by:  (a) being in contact with a health-care worker; (b) running into someone who has dined indoors at a restaurant (prior to November 18th); (c) being near someone who has attended school or been at a hair salon, a sporting event, a political rally, a civil protest or a government-sponsored naturalization ceremony at the U.S.C.I.S. Detroit Field Office; or, (d) simply being in contact with an infected acquaintance.  As such, Plaintiff's standing argument "relies on a highly attenuated chain of possibilities," and "does not satisfy the requirement that threatened injury must be certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

The Court is somewhat perplexed by Plaintiff's other alleged injury – that EO 2020-77 ¶ 16 prevents him from engaging in certain religiously-related activities.  Plaintiff's First Amendment cause of action is based on the Establishment Clause and not the Free Exercise Clause.  (*Compare* ECF No. 27, ¶¶ 41-45 [Injury and Standing], *with id.*, ¶¶ 46-53 [Count I – Government

Favoritism]; *see also*  ECF No. 38, PageID.1028 ("The Plaintiff is proceeding

under the Establishment Clause, the Free Exercise Clause, and the Equal Protection

Clause of the 14th Amendment, not the Free Speech Clause.").)  Nonetheless, in

his response, Plaintiff argues that he "pleads actual, concrete and particularized

injury-in-fact[,]" in support of which he notes EO 2020-77 ¶ 16's effect upon

theatres, gatherings, tattoo parlors, and yoga and exercise studios.  (ECF No. 29,

PageID.833-834.)  Although Plaintiff correctly points out that neither a State nor

the Federal Government "can constitutionally pass laws or impose requirements

which aid all religions as against non-believers, and neither can aid those

religions based on a belief in the existence of God as against those religions

founded on different beliefs[,]" *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961)

(internal and external footnotes omitted), this is an Establishment Clause argument.

*See Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947).  Plaintiff claims

that the decriminalization section's effect upon theatres, gatherings, tattoo parlors

and yoga and exercise studios are "concrete and particularized" and "actual injury-

in-fact which already occurred."  (*Id.*, PageID.834.)  And, following the Michigan

Supreme Court's October 2, 2020 decision, Plaintiff contends that "Concrete

Adverse Legal Interests Between The Parties Still Exist Over The Governor's

Exemption For 'Places of Religious Worship And Their Owners[,]'" (ECF No. 36,

PageID.1009-1010).

Even overlooking Plaintiff's failure to allege a violation of his free exercise rights, as the Governor points out:  "Plaintiff does not allege that he was arrested, cited, or otherwise subject to or threatened with penalty under the orders for attempting to engage in any of these activities as forms of religious of worship." (ECF No. 30, PageID.900-901.)  Plaintiff does attest that threats of misdemeanor criminal penalty prevented him from leading outdoor Pagan religious rituals on Spring Equinox (March 21), May Day (May 1), and Summer Solstice (June 21). (ECF No. 29, PageID.852-853 ¶¶ 11-12, 14.)  However, as the Governor phrases it, Plaintiff "simply asks this Court to assume that he would have been penalized had he chosen to try to do so.  But such speculation and hypotheticals are insufficient to establish standing or to demonstrate that his claim is ripe for review."  (ECF No. 30, PageID.901.)  Furthermore, as the Governor asserted at oral argument, if Plaintiff *had* been arrested or charged on the basis of his religious worship, he would have had defenses under both the First Amendment and the very exemption he challenges in the various executive orders, which exempted him from penalty for religious worship no less than it exempted Jews, Muslims, Hindus or Christians from their religious worship.  Notably, and contrary to what Plaintiff implies, "place of worship" is neither limited in the executive orders to churches – or for that matter (though not the focus of his grievances), synagogues, mosques, shrines or temples – nor to venues in which Monotheism is observed.

### ii.    Connection between injury and conduct

In his response, Plaintiff argues that he "can establish a direct connection between the challenged exemption and his injury-in-fact."  (ECF No. 29, PageID.834-835.)  As with his injury argument, Plaintiff's causal connection argument is based on EO 2020-77 ¶ 16's effect upon theatres, outdoor gatherings, tattoo parlors, and yoga studios.  (*Id.*)  Plaintiff claims these "constitutional deprivations" are not "traceable to a third party[;]" rather, "[t]hey emanate directly from the Governor's office and 'are fairly traceable' . . ." to the decriminalization section (*see Lujan*, 504 U.S. at 560), and he contends that the Governor "has complete control over the *scope* of third party actions with regard to opening." (*Id.*, PageID.835 (emphasis added).)

Yet, even if the Governor's Executive Order removed penalty for "engaging in religious worship at a place of religious worship" (2020-176 ¶ 14), and even if "St[.] Mary's Catholic Church and the Church of God in Jackson[,] Michigan are holding services[,]" (ECF No. 29, PageID.835), the Governor does not have control over a third party's decision to open a place of worship or remain closed or to engage in religious worship at a place of religious worship, not to mention that she would not have control over such third party's decisions to comply or not comply with the Executive Orders' various directives.  "When . . . as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful

regulation (or lack of regulation) of *someone else, . . .* causation and redressability

ordinarily hinge on the response of the regulated (or regulable) third party to the

government action or inaction—and perhaps on the response of others as well."

*Lujan*, 504 U.S. at 562.  (ECF No. 22, PageID.481-482.)  Plaintiff's contention that

he "has not been given that choice with respect to his Pagan religious activities that

are held outdoors, in theatres, in tattoo parlors, or in yoga studios[,]" (ECF No. 29,

PageID.835), is misplaced; as the Governor emphasizes, "[t]he orders exempt

'religious worship at a place of religious worship,' regardless of religious creed."

(ECF No. 30, PageID.899.)

### iii.    Redressability

When arguing that his "actual injury is redressable through this litigation[,]"

Plaintiff focuses upon his alleged injury that the Executive Order prevents him

from engaging in certain religiously-related activities.  (ECF No. 29, PageID.835-

837.)  Redressability requires that "prospective relief will remove the harm[,]" and

Plaintiff must show that "he personally would benefit in a tangible way from the

court's intervention."  *Warth v. Seldin*, 422 U.S. 490, 505, 508 (1975); *see also Am.*

*Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 670 (6th Cir. 2007)

(citing *Warth*).

Plaintiff specifically argues that his injury is "non-speculative," "ongoing,"

and "repeated[,]" – likely references to *City of Los Angeles v. Lyons*, 461 U.S. 95,

111 (1983) – and "would be removed by the Court's intervention" on his behalf.
(ECF No. 29, PageID.836.)  At the heart of Plaintiff's argument is the observation
that churches and theatres are not "on the equal footing they scientifically deserve
during this pandemic."  (*Id*.)  He advocates for "[t]he First Amendment violations
[he] has suffered" to "be shared equally with traditional faiths."  (*Id*.)

Neither a State nor the Federal Government "can pass laws which aid one
religion, aid all religions, or prefer one religion over another."  *Everson*, 330 U.S.
at 15.  And, Plaintiff correctly notes that, "[u]nder a National Constitution,
fundamental First Amendment limitations on the powers of the States do not vary
from community to community[.]"  *Miller v. California*, 413 U.S. 15, 30 (1973).
He claims that "other states . . . are treating churches and theatres in a neutral
fashion[,]" (*id*., PageID.836-837; *see also id*., PageID.828), in support of which he
relies upon Chief Justice Roberts's concurring opinion in the Supreme Court's
recent denial of an application for injunctive relief:

> Although California's guidelines place restrictions on places of
> worship, those restrictions appear consistent with the Free Exercise
> Clause of the First Amendment.  *Similar or more severe restrictions
> apply to comparable secular gatherings*, including lectures, concerts,
> movie showings, spectator sports, and theatrical performances, where
> large groups of people gather in close proximity for extended periods
> of time.  And the Order exempts or treats more leniently only
> dissimilar activities, such as operating grocery stores, banks, and
> laundromats, in which people neither congregate in large groups nor
> remain in close proximity for extended periods.

*S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (emphasis added).

Preliminarily, this concurrence treats theatrical performances as a "comparable secular gathering." (*Id*.) Here, Plaintiff argues – at least in part – that production and performance of his play at the Michigan Theatre is a religious activity. Perhaps this argument would be more convincing if Plaintiff were the owner of the theatre, looking to lease the theatre for religious activities. More to the point, as noted above, the Governor – via counsel – accurately states on the record that "[t]he orders exempt 'religious worship at a place of religious worship,' regardless of religious creed." (ECF No. 30, PageID.899.) Plaintiff is at least somewhat mistaken in saying that "a minority religion like Paganism is prevented from worshiping Dionys[u]s in the theatres or gathering outside on sacred days to worship the Mother Earth and other deities." (ECF No. 29, PageID.836.) Indeed, if Plaintiff can convince a theatre owner that Plaintiff needs the space rented to him for religious worship, and the theatre owner feels comfortable in doing so (particularly after reviewing the exemption language), neither Plaintiff nor the theatre owner would necessarily be prevented from doing so or necessarily be subjected to criminal penalty.

Moreover, Chief Justice Roberts's concurrence does not really aid Plaintiff's cause. Even if removal of the decriminalization section would result in

"symmetry" of the State of Michigan's treatment of churches and its treatment of

other types of venues at which people gather (*id.*, PageID.836-837), Chief Justice

Roberts also stated:

> The precise question of when restrictions on particular social activities
> should be lifted during the pandemic is a dynamic and fact-intensive
> matter subject to reasonable disagreement. Our Constitution
> principally entrusts "[t]he safety and the health of the people" to the
> politically accountable officials of the States "to guard and
> protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38 . . . (1905).
> When those officials "undertake[ ] to act in areas fraught with medical
> and scientific uncertainties," their latitude "must be especially
> broad." *Marshall v. United States*, 414 U.S. 417, 427 . . . (1974).
> Where those broad limits are not exceeded, they should not be subject
> to second-guessing by an "unelected federal judiciary," which lacks
> the background, competence, and expertise to assess public health and
> is not accountable to the people. *See Garcia v. San Antonio
> Metropolitan Transit Authority*, 469 U.S. 528, 545 . . . (1985).

*S. Bay United Pentecostal Church,* 140 S. Ct. at 1613-1614 (emphasis added).

Thus, the Supreme Court made clear its reluctance to decide medical, scientific or

public health issues – which Governor Whitmer was in the best position to

consider when crafting the "stay home, stay safe" and "safe start" Executive

Orders, even if Plaintiff disagrees with such orders or the public health conclusions

on which they were based.

Finally, Plaintiff notes that "[o]ur federal system prizes state

experimentation, but not 'state experimentation in the suppression of free speech,'"

and the same goes for the free exercise of religion." *Espinoza v. Montana Dep't of

Revenue*, 140 S. Ct. 2246, 2260–61 (2020) (quoting *Boy Scouts of America v. Dale*,

530 U.S. 640, 660 (2000)).  Whatever disagreements Plaintiff has with Governor Whitmer's "stay home, stay safe" or "safe start" Executive Orders, the Court does not view these orders as *experimentation*.  "[H]ere, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground.  The notion that it is 'indisputably clear' that the Government's limitations are unconstitutional seems quite improbable." *S. Bay United Pentecostal Church*, 140 S. Ct. at 1614.

### c.   Eleventh Amendment

Finally, a quick note is in order regarding Plaintiff's state constitutional claim – Count III (ECF No. 27, ¶¶ 62-66.)  Plaintiff sues Defendant Whitmer "in her official capacity as Governor of the State of Michigan[.]"  (ECF No. 27, PageID.696.)  As noted above, he seeks declaratory and injunctive relief with respect to Section 16 of EO 2020-77, as well as an award of "costs, expenses, and nominal damages."  (ECF No. 27, PageID.710.)

Defendant argues that "Eleventh Amendment immunity bars adjudication of Plaintiff's state constitutional claim against Governor Whitmer in federal court[.]"  (ECF No. 22, PageID.487-488; ECF No. 30, PageID.900 n.1.)  Plaintiff argues that "Eleventh Amendment Immunity *may* bar adjudication of the Plaintiff's state constitutional claim in federal court."  (ECF No. 29, PageID.839-840 (emphasis added).)

In sum, Defendant is correct.  The Supreme Court has expressly considered "whether a federal court may award injunctive relief against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 91– 92 (1984).  While the Supreme Court recognized that "a suit challenging the constitutionality of a state official's action is not one against the State[,]" it also considered "whether the claim that petitioners violated *state law* in carrying out their official duties at Pennhurst is one against the State and therefore barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 102, 103 (emphasis in original). The Supreme Court concluded that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself." *Id.* at 117.  "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.*, at 121.  "[T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction[,]" (*id.*), or, as it is now known, supplemental jurisdiction.  28 U.S.C. § 1367.  Accordingly, this Court lacks jurisdiction to enjoin Governor Whitmer on the basis of a state constitutional provision, such as Mich. Const. Art. 1, § 4 – the basis of Count III of Plaintiff's operative pleading (ECF No. 27, ¶¶ 62-66).  *Id.* at 124-125 (the E.D. Pa. and the 3rd

Circuit Court of Appeals "lacked jurisdiction to enjoin petitioner state institutions and state officials on the basis of this state law.").

### 2. Whether Plaintiff pleads a constitutional violation?

Defendant argues that Plaintiff fails to plead a constitutional violation. (ECF No. 22, PageID.488-495; *see also* ECF No. 30, PageID.904-905.) Plaintiff disagrees. (ECF No. 29, PageID.841-849.) However, if the Court agrees that Plaintiff's claims are not justiciable, then the Court need not consider whether such claims fail "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

If the Court disagrees with the Undersigned's justiciability conclusion, then it would need to address the threshold issue of whether Plaintiff has plausibly pleaded federal constitutional claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-680 (2009). It seems that Plaintiff would have quite a hill to climb. For example, although it has since been invalidated, Section 10 of the earliest "stay home, stay safe" order, which took effect on March 24, 2020, provided that "a place of religious worship, when used for religious worship, is not subject to penalty . . . [,]" EO 2020-21. This is facially neutral and likely within the Governor's discretion. "[T]he Governor's order need not be the most effective or least restrictive measure possible to attempt to stem the spread of COVID-19. Shaping the precise contours of public health measures entails some

difficult line-drawing.  Our Constitution wisely leaves that task to officials directly accountable to the people." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020) (case citations omitted) (granting Governor Whitmer's motion for an emergency stay); *see also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 769 (7th Cir. 2020).  (ECF No. 37, PageID.1020 n.4) (albeit concerning a "free exercise of religion" provision, "all that the Governor did was to limit to a certain degree the burden on religious exercise that EO43 imposed.").  Her ability to "limit to a certain degree the burden on religious exercise" appears well within the broad discretion afforded to the political branches in both *S. Bay United Pentecostal Church* and *Jacobson*, even if her executive orders provided more freedom for religions than Plaintiff would have preferred.  Furthermore, under rational basis review, Governor Whitmer's action "'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *League of Indep. Fitness Facilities & Trainers, Inc.*, 814 F. App'x at 128 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).  As the Governor aptly put it at oral argument:

> There's a very clear reason why this exemption was in place and that's because the First Amendment exists.  There's free exercise in this country going back since the beginning of the country, which is exactly [the] reason why this exemption was put into the executive order, because if the Governor was to criminalize all religious worship, that is just about the definition of a free exercise violation…. That is a very clear rational basis for this exemption.

### E.   Conclusion

To be clear, this recommendation does not question whether Plaintiff's beliefs constitute a religion.  During the July 9, 2020 oral argument on Plaintiff's motion for injunctive relief, Plaintiff explained that Druidism is a subset of Paganism.  The Governor has not, thus far, contested the characterization of Druidism as a religion for purposes of standing.[9]  Yet, even assuming for purposes of standing that Druidism is a religion, Plaintiff's claims are not justiciable.  Accordingly, the Governor is entitled to dismissal of Plaintiff's operative pleading, the June 19, 2020 amended verified complaint (ECF No. 27).

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

---

[9] As at least one legal publication has explained, "Neo-Paganism comports with the Supreme Court's definition of a valid religion protected by the United States Constitution."  *See* Bradford S. Stewart, *Opening the Broom Closet: Recognizing the Religious Rights of Wiccans, Witches, and Other Neo-Pagans*, 32 N. Ill. U. L. Rev. 135, 137 (2011) (citing *United States v. Ballard*, 322 U.S. 78, 86 (1944)).  Moreover, at least one court has explained that, "[m]ore likely than not, the [low-threshold 'inclusion test'] also includes obscure beliefs such as Paganism, Zoroastrianism, Pantheism, Animism, Wicca, Druidism, Satanism, and Santeria."  *United States v. Meyers*, 906 F. Supp. 1494, 1503 (D. Wyo. 1995), *aff'd*, 95 F.3d 1475 (10th Cir. 1996).

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  November 23, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE