UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BORMUTH,

              Plaintiff,                     Case No. 2:20-cv-11399
                                                   District Judge Mark A. Goldsmith
v.                                          Magistrate Judge Anthony P. Patti[1]

GRETCHEN WHITMER,

              Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S NOVEMBER 25, 2020 MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT UNDER FED. R. CIV. P. 15(d) (ECF No. 44)

## I.    OPINION:

### A.    Introduction

This is a highly unusual case.  While most pandemic-related cases involving

---

[1] In his motion papers, Plaintiff repeatedly refers to the Undersigned as "Magistrate."  (*See* ECF No. 44-1, PageID.1097, 1105; ECF No. 51, PageID.1287 n.1.)  While this title may exist in state courts, the title "magistrate" no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in 1990.  Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge.").  *See* Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 FED. COURTS L. REV. 1, 5-6 (2015).  Thus, the word "magistrate" is no longer appropriately used as a noun in federal courts, but only as an adjective indicating the *type* of judge to which one is referring.  Plaintiff is reminded to use the correct title, in the future, when referring to Judge Patti.

religious freedom have challenged restrictions on religious worship, Plaintiff here attacks the *exemptions against criminal prosecution* for religious gatherings. (ECF No. 44-1, PageID.1107-1115, ¶¶ 10-12,15-17, 21, 23-24, 29-30, 40, and Prayer for relief, ¶¶ A-B.) In Plaintiff's initial pleading – brought under, *inter alia*, the First Amendment's Establishment Clause – he sought to remove the religious practice exemption, because – with particular emphasis on Christianity – he claimed that houses of worship could potentially be super-spreaders, which would expose him to the Covid-19 virus. Now, in his proposed supplemental complaint, while still largely taking issue with the exemptions, Plaintiff also seeks to claim that the Covid restrictions inhibited his own free expression of religious beliefs. The exemptions at issue neither establish a state religion, nor favor particular religions, nor inhibit Plaintiff's own free expression of genuinely-held religious beliefs. Plaintiff's proposed supplementation to his complaint does not change this reality, and his corresponding prayer for declaratory and injunctive relief – to effectively obliterate the exemptions for places of religious worship and their owners – runs contrary to multiple recent United States Supreme Court opinions or orders disfavoring religious restrictions or directing exemptions for religious worship like the ones at issue here. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 at 65-66, 68 (2020) (granting injunctive relief against New York Executive Order that "impose[d] very severe restrictions on attendance at religious services . .

." and, thereby, "[struck] at the very heart of the First Amendment's guarantee of religious liberty."); *High Plains Harvest Church v. Polis*, 141 S. Ct. 527 (2020) (Mem.) (vacating District of Colorado's order denying injunctive relief related to the state's "capacity limits on worship services" and ordering further consideration in light of *Roman Cath. Dioceses of Brooklyn*); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889 (2020) (Mem.) (vacating Central District of California's order denying injunctive relief from ban on indoor religious services and ordering further consideration in light of *Roman Cath. Dioceses of Brooklyn*); *Robinson v. Murphy*, 141 S. Ct. 972 (2020) (Mem.) (vacating District of New Jersey's order denying injunctive relief from executive orders, which limited occupancy for indoor religious-purpose gatherings and extended mask requirements to religious services, and ordering further consideration in light of *Roman Cath. Dioceses of Brooklyn*); *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (holding that the Ninth Circuit should have granted injunctive relief – pending appeal – as to California's restrictions on religious exercise that were unlikely to withstand strict scrutiny); *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021) (Mem.) (holding that the Ninth Circuit should have granted injunctive relief – pending appeal – from Santa Clara County's indoor-gathering restrictions as applied to plaintiffs-appellants' places of worship). Moreover, none of Plaintiff's proposed claims, including the Free Exercise claim he seeks to add, are justiciable. For the reasons that follow,

Plaintiff's request to supplement will be denied.

**B.     Background**

Plaintiff initiated this lawsuit on May 18, 2020, amidst Governor Whitmer's issuance of Executive Orders concerning the State of Michigan's response to the coronavirus pandemic.  Plaintiff thereafter amended his complaint on multiple occasions.  (*See* ECF Nos. 5, 7, 27.)  In sum, he challenged the constitutionality of Executive Order 2020-77, namely Paragraph 16 therein:

> . . . Consistent with prior guidance, neither a place of religious worship nor its owner is subject to penalty under section 20 of this order for allowing religious worship at such place.  No individual is subject to penalty under section 20 of this order for engaging in or traveling to engage in religious worship at a place of religious worship, or for violating section 15(a) of this order.

(ECF No. 27, PageID.728; ECF No. 27, ¶¶ 11, 23, 25, 45.)  Plaintiff's causes of action were alleged violations of the First Amendment's Establishment Clause, the Fourteenth Amendment's Equal Protection Clause, and the Michigan Constitution. (ECF No. 27, ¶¶ 46-66.)

**C.     The March 2021 dismissal**

Judge Goldsmith referred this case to me for pretrial matters.  In November 2020, I entered two reports and recommendations, the latter of which concerned Governor Whitmer's June 24, 2020 motion to dismiss (ECF No. 22).  (ECF No. 41.)  The lengthy discussion of justiciability addressed, *inter alia*, two issues significant to the matter currently at bar:  (1) mootness – both "based on the

Governor's orders" and "not cured by MDHHS order," (ECF No. 41, PageID.1048-1056); and, (2) standing – including Plaintiff's alleged injuries, the connection between injury and conduct, and redressability (ECF No. 41, PageID.1056-1068). Although I also considered whether Plaintiff had pleaded a constitutional violation, I noted that it was not necessary to reach this question if the Court agreed that Plaintiff's claims were not justiciable. (ECF No. 41, PageID.1070-1071.)[2]

On March 10, 2021, Judge Goldsmith entered an order denying the motion for a temporary restraining order and preliminary injunction, granting the motion to dismiss, and reserving judgment. (ECF No. 53.) Importantly, Judge Goldsmith noted:

> Because the executive order at issue is no longer operative, and there has been no showing of a foreseeable threat of reinstatement of a similar executive order by the Governor, the complaint must be dismissed as moot, and the motion for temporary restraining order and preliminary injunction must be denied as moot. However, because Bormuth has filed a motion to file a supplemental complaint ([ECF

---

[2] In his November 25, 2020 and December 7, 2020 objections, Plaintiff posits that "strict scrutiny must be applied" in his case. (ECF No. 43, PageID.1095; ECF No. 47, PageID.1243.) To the extent the Court referenced "rational basis review" in its November 20, 2020 report (ECF No. 40, PageID.1038) or its November 23, 2020 report (ECF No. 41, PageID.1071), it related to the Court's review of Governor Whitmer's order or action on public health-related measures, not the Court's review of Plaintiff's alleged violation of the First Amendment's Establishment Clause. In any case, the exemption *to permit religious worship free from criminal prosecution* is consistent with several recent Supreme Court decisions and would easily pass muster under strict scrutiny, as cited above.

No.] 44), which is currently pending before the magistrate judge, this action as a whole will not be dismissed, and judgment will not presently issue.

(ECF No. 53, PageID.1307; *see also id*., PageID.1312.)

Plaintiff then filed a motion for reconsideration. (ECF No. 54.) Governor Whitmer filed a response, in which she invited the Court to adopt my report and recommendation in full and dismiss the case. (ECF No. 56, PageID.1357.) On May 13, 2021, Judge Goldsmith denied the motion for reconsideration. (ECF No. 57).

### D. Plaintiff's November 25, 2020 motion to supplement

Currently before the Court is Plaintiff's November 25, 2020 motion for leave to file his proposed supplemental complaint, which Plaintiff filed concurrently with his objections to other matters (ECF Nos. 42, 43) and on the same day the United States Supreme Court issued its decision in *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 63.

Plaintiff seeks to add Robert Gordon as a Defendant and set out "transactions, occurrences, events, and evidence that happened after the Plaintiff mailed his Amended Verified Complaint on May 23, 2020." (ECF No. 44, PageID.1097-1098.)[3] Governor Whitmer has filed a response (ECF No. 48), and

---

[3] In his instant, November 25, 2020 motion, Plaintiff claims that his proposed supplemental complaint concerns post-May 23, 2020 matters (ECF No. 44,

Plaintiff has filed a reply (ECF No. 51).

### E.    Discussion

#### 1.    Fed. R. Civ. P. 15(d) ("Supplemental Pleadings.")

I begin with a procedural observation.  Plaintiff is requesting to *supplement*

his complaint in accordance with Fed. R. Civ. P. 15(d), which states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. *The court may permit supplementation even though the original pleading is defective in stating a claim or defense*. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d) (emphasis added).  As one Court has put it:

> A motion to supplement a complaint under Fed. R. Civ. P. 15(d) is properly addressed to the discretion of the trial court. *Allen v. Reynolds*, No. 89-6124, 1990 WL 12182, at * 2 (6th Cir. Feb. 13, 1990) (*citing Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)).  While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action.  *Planned Parenthood of S. Cali. v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997).  Where a motion seeks to add entirely new claims that occurred before the original pleading, the

---

PageID.1097-1098), which would mean that he seeks to supplement for matters occurring after the second amended complaint (ECF No. 7).  However, his November 25, 2020 proposed supplemental complaint concerns "events that have occurred and claims that have arisen since the Plaintiff mailed his Amended Verified Complaint to this Court on June 8, 2020[,]" (ECF No. 44-1, ¶ 9), which seems to be a reference to Plaintiff's June 9, 2020 proposed amended complaint, which itself was approved by the Court on June 19, 2020 (ECF Nos. 18, 20) and separately filed effective the same date (ECF No. 27).  Thus, this opinion treats Plaintiff's motion to supplement as relating to matters that have occurred since June 2020.

> motion is properly considered to be a motion to amend, not one to
> supplement. *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007); *see*
> *also United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002)
> (within the meaning of Rule 15, supplements relate to events that have
> transpired *since* the date of the original pleading, while amendments
> typically rely on matters in place *prior to* the filing of the original
> pleading).

*White v. Corizon, Inc.*, No. 1:19-CV-948, 2020 WL 813410, at *7 (W.D. Mich.

Feb. 19, 2020); *see also Moore's Federal Practice* 3d, § 15.30 ("It is within the

discretion of the court to allow a supplemental pleading to be filed at any stage of

the case…."). "And in exercising its discretion, a trial court should be mindful that

supplementation, like amendment, should be freely granted, but, on the other hand,

the non-moving party might be prejudiced by supplementation, adding post-

complaint claims may be judicially inefficient, and the supplemental claims may

be futile because they fail to state a claim upon which relief may be granted."

*Coleman v. Gullet*, No. CIV.A. 12-10099, 2013 WL 4026839, at *5 (E.D. Mich.

Aug. 6, 2013) (Michelson, M.J.), *report and recommendation adopted*, No. CIV.A.

12-10099, 2013 WL 5172306 (E.D. Mich. Sept. 13, 2013) (Goldsmith, J.).

Significantly, a court does not abuse its discretion in denying a motion for leave to

supplement where the new information sought to be added would not "remedy the

deficiencies in the original complaint." *Beezley v. Fremont Indemnity Co.*, 804 F.2d 530, 531 (9th Cir. 1986).[4]

Plaintiff's motion is clearly based on Rule 15(d). (*See* ECF No. 44, PageID.1097-1098, 1101-1102, 1107.) At the time Plaintiff filed his November 2020 motion to supplement, Judge Goldsmith had yet to enter his March 2021 ruling on the dispositive motions – including dismissal of the formerly operative pleading, *i.e.,* Plaintiff's June 19, 2020 amended complaint (ECF No. 27). (*See* ECF No. 53, PageID.1312.) Thus, as the Court now takes up Plaintiff's request to supplement − after waiting to see how Judge Goldsmith would decide the motion for reconsideration (ECF No. 54) and whether he would grant Governor Whitmer's responding request to dismiss the entire case on grounds other than mootness (ECF No. 56, PageID.1357) − it is nevertheless considering supplementation of a since-dismissed complaint. In other words, supplementing under these circumstances is akin to filing a new complaint.

### 2. Comparing the formerly operative (yet since dismissed) pleading and the proposed supplemental pleading

#### a. Introduction

---

[4] Incidentally, "the same standard of review and rationale apply . . ." to a motion to amend under Fed. R. Civ. P. 15(a) and a motion to supplement under Fed. R. Civ. P. 15(d). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002).

The introduction of the formerly operative complaint mentions Paragraph 16 of the May 7, 2020 Executive Order – *i.e.*, EO 2020-77.  (ECF No. 27, ¶¶ 8-13.)  By comparison, the introduction to the November 25, 2020 proposed supplemental complaint mentions:  (1) the Michigan Supreme Court's October 2, 2020 decision about the Emergency Management Act (EMA) and the Emergency Powers of the Governor Act (EPGA), *In re Certified Questions From United States Dist. Ct., W. Dist. of Michigan, S. Div.*, 506 Mich. 332, 958 N.W.2d 1 (2020);[5] and, (2) emergency orders issued under the authority of Mich. Comp. Laws Ann. § 333.2253 ("Epidemics; issuance of emergency orders by director; cooperation by department of agriculture").  (ECF No. 44-1, ¶¶ 9-15.)  In the wake of the Michigan Supreme Court's decision, the MDHHS has issued multiple orders related to gatherings and face masks, each of which has a religious worship exemption.  *See*, *e.g.*, *Emergency Order Under MCL 333.2253 – Gathering Prohibition and Mask Order* (Oct. 5, 2020) (Paragraph 6(d)) through *May 15, 2021 Gatherings and Face Mask Order* (May 14, 2021) (Paragraph 9(d)), and *June 1, 2021 Gatherings and Face Mask Order* (Paragraph 7(d)).  On June 22, 2021, the

---

[5] *See also In re Certified Questions from United States Dist. Ct. , W. Dist. of Michigan, S. Div.*, 506 Mich. 933, 949 N.W.2d 274 (Oct. 12, 2020) ("On order of the Court, the motion for immediate consideration is GRANTED.  The motion to stay the precedential effect of the October 2, 2020 opinion is considered, and it is DENIED.").

latest of these emergency orders was rescinded. *See Rescission of Emergency Orders* (signed on June 17, 2021; effective on June 22, 2021).

### b. Factual allegations

The factual allegations in the formerly operative pleading span the period from March 10, 2020 – Declaration of State of Emergency (EO 2020-4) – to June 8, 2020 (ECF No. 27, ¶¶ 14-36), while the factual allegations in the proposed supplemental complaint span the period from August 1, 2020 – *i.e.*, the celebration of Lughnasa – through November 15, 2020 – the date of MDHHS Director Gordon's *Emergency Order under MCL 333.2253 – Gatherings and Face Mask Order* (ECF No. 44-1, ¶¶ 16-25).

Plaintiff's proposed supplemental pleading mentions EOs 2020-115 and 2020-176 (ECF No. 44-1, ¶¶ 16, 17, 32) and the October 5th, October 29th and November 15th MDHHS orders (*id.*, ¶¶ 21, 23, 24). The MDHHS later issued multiple *Gatherings and Face Mask Orders*, the latest of which became effective on June 1, 2021 and provided the following religious worship exemption: "Neither a place of religious worship nor its owner is subject to penalty under this order for allowing religious worship at such place. No individual is subject to penalty under this order for engaging in religious worship at a place of religious worship." June 1, 2021 *Gatherings and Face Mask Order* (Paragraph 7(d)). However, as noted above, the June 1, 2021 order was rescinded on June 22, 2021.

### c. Causes of action

To be comprehensive, the formerly operative complaint had a *separate* "injury and standing" section (ECF No. 27, ¶¶ 37-45), which does not appear in the proposed supplemental complaint (ECF No. 44-1). More importantly, the causes of action in the former are the First Amendment's Establishment Clause, the Fourteenth Amendment's Equal Protection Clause, and the Michigan Constitution (ECF No. 27, ¶¶ 46-66), while the proposed supplemental complaint alleges violations of the First Amendment's Establishment Clause (titled "Government Favoritism" in Count I of the proposed supplement), the *First Amendment's Free Exercise Clause*, and the Fourteenth Amendment's Equal Protection Clause (ECF No. 44-1, ¶¶ 26-41). The new claim under the Free Exercise Clause alleges that Plaintiff's engagement in certain religious activities was *curtailed* by the Governor's and MDHHS Director's orders (*id*., PageID.1111-1114, ¶¶ 32-34), while the other two counts hinge on the *exemptions'* alleged unequal treatment (*id*., ¶¶ 29, 30, 41).

### d. Prayers for relief

In addition to requesting nominal damages, costs and expenses, Plaintiff's formerly operative pleading requested that the Court:

A. Issue a declaratory judgement that paragraph 16 of Defendant's EO 2020-77 is unlawful and unconstitutional and that Defendant violates Plaintiff's fundamental constitutional rights for all the reasons stated in this complaint.

> B. Issue a permanent injunction to enjoin Defendant to remove
> paragraph 16 from her EO 2020-77 and from including it in any
> future EO's.

(ECF No. 27, PageID.710). Similarly, Plaintiff's proposed supplemental

complaint seeks nominal damages, costs and expenses (and "any other such relief

as the Court deems just and appropriate") and asks the Court to:

> A. Issue a declaratory judgement that the exemption for "places of
> religious worship and their owners["] is unlawful and
> unconstitutional irregardless [sic] of the statutory authority
> under which it is issued and that Defendant[s] violate Plaintiff's
> fundamental constitutional rights for all the reasons stated in
> this complaint.
>
> B. Issue a permanent injunction to enjoin Defendant[s] to remove
> the exemption from any emergency orders issued under MCL
> 333.2253 and to enjoin them from including it in any future
> EO's issued under MCL 30.401 or MCL 333.2253.

(ECF No. 44-1, PageID.1114-1115.)

### 3. Judicial efficiency

It is important to remember that, in its essence, Plaintiff's lawsuit – whether

by the formerly operative pleading or the proposed supplemental pleading –

challenges the religious worship exemption. In the instant motion, Plaintiff claims

that the Michigan Supreme Court's October 2, 2020 decision – which concerned

the EMA (Mich. Comp. Laws §§ 30.401, et seq.) and the EPGA (Mich. Comp.

Laws §§ 10.31, et seq.) – necessitates the filing of a supplemental complaint.

(ECF No. 44, PageID.1101.) He argues that: (i) Defendant Whitmer "issues her

emergency orders through her agent," Defendant Gordon; (ii) the orders are issued

under the authority of Mich. Comp. Laws § 333.2253; and, (iii) the October 5,

October 29, and November 15 MDHHS orders "have created new claims that the

Plaintiff seeks to add to this case." (*Id.*, PageID.1101.)[6] Plaintiff acknowledges

the alternative – initiation of "a separate action against Robert Gordon in his

official capacity," which he claims would "involve needless expense, delay, and

waste of judicial resources." (ECF No. 44, PageID.1102.) But his suggestion is to

"add Gordon as a defendant in this case," because "he is Whitmer's agent." (ECF

No. 44, PageID.1102-1103.)

The Court agrees with Plaintiff that allowing him to file a supplemental

complaint would "avoid piecemeal litigation between essentially the same parties

on substantially identical issues[,]" and that, at least at the time that this motion

was filed, "[t]here [wa]s still a live controversy between the parties over the

Constitutional issues the Plaintiff has raised." (*Id.*, PageID.1103.) *Troxel Mfg. Co.*

*v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973) ("piecemeal litigation

should be discouraged, not only because it is antagonistic to the goals of public

---

[6] Although the Court disagrees that any of the subsequent events have created *new claims* that did not exist until the late Summer of 2020 (as the exemptions and restrictions have remained essentially the same throughout the pandemic), the *effects* experienced by Plaintiff may have changed *factually* (*e.g.*, different times of the year involve different religious celebrations). In any event, the Court does not base its opinion on whether these truly are new claims (as opposed to similar claims on changed facts).

policy, but also because it is prejudicial to the rights of individual litigants.").  As noted in more detail above, the proposed supplemental complaint adds a party (Gordon), concerns a new source of authority (Mich. Comp. Laws Ann. § 333.2253), relates to a different period of factual allegations (August 1, 2020 – November 15, 2020), and adds a new cause of action (First Amendment Free Exercise Clause).  Nonetheless, the crux of this lawsuit is a religious worship exemption, and Paragraph 16 of Defendant Whitmer's EO 2020-77 is similar to Paragraph 10(d) of the MDHHS order.  Thus, the Court concludes that it would be judicially inefficient to require Plaintiff to file a new lawsuit with respect to his proposed supplemental complaint.  In fact, the Court suspects that Defendant Whitmer would agree with this approach, as she takes the position that "the [proposed] supplemental complaint contains no allegations that would remedy dismissal[.]"  (ECF No. 48, PageID.1248.)  *See also McHenry v. Ford Motor Co.*, 269 F.2d 18 at 24, 25 (6th Cir. 1959) (considering "whether leave should be given to file the proposed amended and supplemental complaint as if no summary judgment had been entered[,]" and directing that "plaintiffs be permitted to serve and file an appropriate amended and supplemental complaint bringing to date the claimed damages which plaintiffs aver they have suffered as a proximate consequence of defendant's alleged continuing trespass."); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) ("The amended cause of action is not so different as

to cause prejudice to the defendants, nor do we find the delay particularly 'undue' considering the course of this case through a prior appeal to this Court.") (external footnote omitted).

### 4.    Justiciability

The Court first considers whether Plaintiff's proposed supplemental causes of action are justiciable.  "In assessing whether a claim is justiciable, courts look to several doctrines, including standing, mootness, ripeness, and political question." *In re Rosenfeld*, 558 B.R. 825, 828 (E.D. Mich. 2016) (Battani, J.), *aff'd*, 698 F. App'x 300 (6th Cir. 2017) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  Two doctrines remain important here.

### a.    Mootness

In November 2020, when I recommended that mootness was not cured by the MDHHS order, I stated:  "the Court cannot take action against a person or party not currently before it – in this case MDHHS Director Gordon – with respect to his action that is not the subject of the operative pleading – here an MDHHS Emergency Order under Mich. Comp. Laws § 333.2253."  (ECF No. 41, PageID.1053-1054.)  At present, Plaintiff seeks to bring claims against both Governor Whitmer and then-MDHHS Director Robert Gordon (ECF No. 44-1, ¶¶ 2-3), although it should also be noted that, since Plaintiff filed his November 25, 2020 motion to supplement, Elizabeth Hertel has replaced Gordon as the MDHHS

Director, although this is easily remedied under Fed. R. Civ. P. 25(d).  *See*

https://www.michigan.gov/mdhhs/0,5885,7-339-73970_73993-353437--,00.html.

More importantly, Plaintiff's proposed supplemental complaint mainly seeks

declaratory and injunctive relief (ECF No. 44-1, PageID.1114-1115), and the

MDHHS June 1, 2021 *Gatherings and Face Mask Order* – Paragraph 7(d) of

which is similar to, *e.g.*, Paragraph 10(d) of the November 15, 2020 MDHHS

*Gatherings and Face Mask Order* – was rescinded effective June 22, 2021.  As a

result, the subject clause of Plaintiff's proposed supplemental pleading has since

been rescinded by an order that does not contain a like religious practice

exemption.  Therefore, Plaintiff's challenge to this provision is moot, and so are

his related prayers for declaratory and injunctive relief, including the request to bar

future such provisions.  In fact, Judge Goldsmith previously rejected the notion

that the EMA "might be invoked in a future emergency."  (ECF No. 53,

PageID.1308.)  In adopting my prior recommendation that the now formerly

operative pleading be dismissed as moot, Judge Goldsmith found that Plaintiff's

claim that "'bat-borne coronaviruses' will cause new and distinct outbreaks . . ."

did not "rise beyond the realm of speculation and conjecture," falling "well short

of the case or controversy requirement for this Court's jurisdiction."  (*Id*.)  The

same is true of the proposed supplemental pleading's request to enjoin Defendants

"from including [the exemption] in any future EO's issued under MCL 30.401 or MCL 333.2253." (ECF No. 44-1, PageID.1115 ¶ B.)

To be sure, Plaintiff's proposed supplemental pleading seeks an award of his "costs, expenses, and nominal damages." (ECF No. 44-1, PageID.1115 ¶ C.) In his motion for reconsideration of the Court's prior order, Plaintiff argued there had been "an intervening change in controlling law[,]" for which he cited *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), and addressed the issue of nominal damages. (ECF No. 54, PageID.1315-1318.) However, Judge Goldsmith found that Plaintiff's nominal damages claim was not justiciable, and ultimately denied Plaintiff's motion for reconsideration. (ECF No. 57, PageID.1360-1361.) Specifically, in *Uzuegbunam*, the Supreme Court concluded that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on *a completed violation of a legal right*." *Uzuegbunam*, 141 S. Ct. at 802 (emphasis added). Here, in contrast, Plaintiff was not harmed in relation to his Establishment Clause and Equal Protection Clause claims, as the religious worship exemption did not violate his constitutional rights; even if it did, the offending orders have been rescinded, and Plaintiff's formerly operative nominal damage claim was previously found by Judge Goldsmith to be "not justiciable" because Plaintiff's damage claims against state government officers in their official capacity are barred by sovereign immunity. (ECF No. 57, PageID.1360-1361.)

Plaintiff's proposed supplemental complaint likewise seeks to sue both Governor Whitmer and Director Gordon in their official capacities. (ECF No. 44-1, PageID.1105-1106.)  Thus, as before, "Plaintiff's nominal damages claim does not save" the day.  (ECF No. 57, PageID.1361.)

### b.     Standing

As Judge Goldsmith previously ruled, the lack of a live, existing executive order to enjoin (ECF No. 53, PageID.1307), the speculative nature of Plaintiff's "future emergency" claim (*id*., PageID.1308), and the prohibition against obtaining damages from a government official in his or her official capacity (ECF No. 57, PageID.1360-1361) render moot or dismissible the various prayers for relief – declaratory, injunctive, and nominal damages – set forth in the proposed supplemental pleading (ECF No. 44-1, PageID.1114-1115).  Nevertheless, the Court alternatively finds that the proposed supplement would not cure Plaintiff's lack of standing, as argued by the Governor.  (ECF No. 48, PageID.1252-1253.) Thus, a brief review of Plaintiff's proposed causes of action is warranted.

### i.     Establishment Clause

While the dismissed First Amendment Establishment Clause claim was based on EO 2020-77 (ECF No. 27, ¶¶ 46-53), the proposed supplemental complaint alleges that:

- Governor Whitmer and MDHHS Director Robert Gordon have consistently favored "places of religious worship and their

owners" and allocated a benefit to religion: an exemption from otherwise neutral orders designed to protect public health.

- In Jackson County, Michigan, there is only one Jewish Temple, and one small Mosque, but one hundred thirteen (113) Christian Churches of various denominations, so that the *overriding effect of the exemption* for "places of religious worship and their owners" has been to support, aid, and foster the Christian religion in violation of the Establishment Clause.

(ECF No. 44-1, ¶¶ 26-30 (emphasis added)). Put another way, Plaintiff alleges that the religious worship exemption allocates "a benefit to religion," *i.e.*, "an exemption from otherwise neutral orders designed to protect public health[,]" and, in particular, the Christian religion. (*Id.*) (*See also id.*, ¶¶ 11-12.)

### ii. Free Exercise Clause

In his proposed supplemental Free Exercise claim, Plaintiff alleges that his religious rights were curtailed:

- in August and September 2020 by Governor Whitmer's Executive Orders 2020-115 (June 5, 2020) or 2020-176 (Sept. 4, 2020) (ECF No. 44-1, ¶ 32);

- on October 31, 2020 by the October 29, 2020 MDHHS Order (*id.*, ¶ 33); and,

- in various ways by the November 15, 2020 MDHHS Order (*id.*, ¶ 34).

Stated otherwise, Plaintiff claims that his right to free exercise of his Pagan religion was curtailed on August 1, 2020 (Lughnasa) by Governor Whitmer's EO 2020-115, on September 19-22, 2020 (Autumnal Equinox) by Governor Whitmer's

EO 2020-176, on October 31, 2020 (Halloween) by MDHHS Director Gordon's October 29, 2020 *Gatherings and Face Mask Order*, and – at the time of his November 25, 2020 proposed supplemental pleading – by MDHHS Director Gordon's November 15, 2020 *Emergency Order under MCL 333.2253 – Gatherings and Face Mask Order*, which "clos[ed] theatres, bars and yoga studios," and "strictly limit[ed] indoor and outdoor gatherings." (ECF No. 27, ¶¶ 31-34.)

### iii. Equal Protection Clause

Plaintiff's now-dismissed Fourteenth Amendment Equal Protection claim took issue with the alleged effect of Defendant Whitmer's EO 2020-77 upon Plaintiff's rights to gather at a bar, attend yoga, produce and perform his play, get a tattoo, and hold outdoor religious gatherings. (ECF No. 27, ¶¶ 54-61.) Similarly, Plaintiff's proposed supplemental Equal Protection Clause claim takes issue with the alleged effect of Defendant Gordon's October 29, 2020 and/or November 15, 2020 orders upon Plaintiff's rights to gather at a bar, attend yoga, produce and perform his play, hold outdoor religious gatherings, and participate in "Pagan Halloween celebrations, rituals and revels . . . ." (ECF No. 44-1, ¶¶ 35-41.) In Plaintiff's view, "Christian citizens were given an exemption to practice their religion[,]" and "were allowed to gather in their 'places of religious worship[,]'" such as on November 1, 2020, which is presumably a reference to All Saints' Day.

(ECF No. 44-1, ¶¶ 40, 41.)  In other words, Plaintiff suggests that the challenged religious worship exemption treats Christians differently – although the proposed supplemental pleading also mentions that Jackson County has one "Jewish Temple" and "one small Mosque" – than it does Pagans.  (ECF No. 44-1, ¶¶ 37-41.)  (*See also id.*, ¶¶ 12, 30.)

### iv.    Alleged injury

Governor Whitmer claims that Plaintiff is without standing, because he "has simply not identified any cognizable injury from any of these orders[,]" *e.g.*, he does not allege that he "was arrested, cited, or otherwise subject to any threat of penalty for conducting any of these activities as forms of religious worship."  (*Id.*, PageID.1252.)  In fact, Governor Whitmer notes:  "the activities that Plaintiff alleges create an injury are in fact eligible for the very exemption that Plaintiff challenges in the orders – *assuming Plaintiff is conducting these activities for religious worship.*"  (*Id.*, PageID.1253 (emphasis added).)

In his reply, Plaintiff argues that he "identified cognizable injuries[,]" such as outdoor gathering bans/restrictions that prevented Pagans from gathering on several dates in 2020 – March 19th (Spring Equinox), May 1st (May Day), June 20th (Summer Solstice), August 1st (Lughnasa), September 19th-22nd (Autumnal Equinox), and October 31st (Halloween) – which he alleges resulted in irreparable harm.  (ECF No. 51, PageID.1284.)  And, he claims that there is unequal treatment

between the Catholics and Orthodox Jews – whose religious practice was the

subject of *Roman Cath. Diocese of Brooklyn* and who were not required to be "first

arrested, cited or subjected to penalty[,]" in order to establish standing or harm –

and Pagans.  (ECF No. 51, PageID.1284-1285.)

However, this likening is misplaced.  For one, the applicants in that case had

"clearly established their entitlement to relief *pending appellate review*."  *Roman*

*Cath. Diocese of Brooklyn*, 141 S. Ct. at 66 (emphasis added).  Perhaps more

importantly, the regulations at issue in that case could not be viewed as neutral,

because "they single[d] out houses of worship for especially harsh treatment."  (*Id.*

(footnote omitted).)  Here, Plaintiff challenges an MDHHS religious worship

*exemption*, which is religiously neutral on its face.  And, to the extent he claims his

free exercise of his religion has been thwarted, the very exemption he challenges

ensured his right to worship in accordance with his genuinely-held religious

beliefs, without fear of prosecution.

More specifically, to the extent Plaintiff's Establishment Clause claim is

based on "protect[ing] public health[,]" (ECF No. 44-1, ¶ 29), Plaintiff still "relies

on a highly attenuated chain of possibilities," and "does not satisfy the requirement

that threatened injury must be certainly impending."  *Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 410 (2013).  (*See also* ECF No. 41, PageID.1060.)  Also,

Plaintiff's argument that "[a]rrest is not required for standing in a First

Amendment Claim[,]" (ECF No. 51, PageID.1287-1289), is unavailing as to the cause currently before the Court. True, the Supreme Court has observed that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims *deters* the exercise of his constitutional rights[,]" but the Supreme Court said so where there were alleged threats of prosecution that could not be characterized as imaginary or speculative. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (emphasis added).[7] *See also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987) ("Planned Parenthood's fear of prosecution is reasonably founded in fact."); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("past enforcement against the same conduct is good evidence that the threat of enforcement is not []'chimerical.'[]") (quoting *Steffel,* 415 U.S. at 459). Here, even acknowledging that the MDHHS June 1, 2021 *Gatherings and Face Mask Order* contains a criminal punishment provision – "Consistent with MCL 333.2261, each violation of this order is a misdemeanor punishable by

---

[7] The petitioner in *Steffel* had been "twice warned to stop handbilling . . . [,]" and "told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Moreover, the Supreme Court considered "[t]he prosecution of petitioner's handbilling companion" to be "ample demonstration that petitioner's concern with arrest" had not been "'chimerical[.]'" *Steffel*, 415 U.S. at 459 (citation omitted).

imprisonment for not more than 6 months, or a fine of not more than $200.00, or both[,]" Paragraph 7(e) – Plaintiff's exemplars of boaters and business owners who were cited for non-compliance are not, as Plaintiff puts it, "good evidence that the threat of enforcement is not chimerical." (ECF No. 51, PageID.1288-1289.) None of these examples are religious worship-related citations, Pagan or otherwise. And this is likely so because of the very exemption that Plaintiff is challenging. Were there no such exemption, Plaintiff would be in a much stronger position to assert standing, as would Muslims, Hindus, Buddhists, Jews, Christians, *etc*.

### v.    Neutrality

To the extent Plaintiff's Establishment Clause claim alleges an "overriding effect" of favoring the Christian religion, his argument seems to be based on his assertion that, within Jackson County, there is only one Jewish synagogue and one small mosque in comparison to an alleged 113 Christian churches of various denominations. (ECF No. 44-1, ¶¶ 12, 30.) These numbers do not support a claim, as the religious worship exemption in question is *neutral* on its face and benefits *all* religions, *i.e.*, it protects both widely practiced forms of religious worship and less common ones. The assertion that larger religions are necessarily favored over smaller ones in a religious exemption merely by dint of their sheer number of adherents is a *non sequitur*. Furthermore, in addition to the exemption's facial

neutrality, Plaintiff does not allege that the exemption has been *applied* in a disparate manner.

The same can be said of Plaintiff's Equal Protection claim. Moreover, perhaps unlike Covid-related religious worship exemptions in other states, Michigan's exemptions apply broadly to "places of religious worship," not solely to "houses of worship." *See, e.g., Commonwealth v. Beshear*, 981 F.3d 505, 509-10 (6th Cir. 2020). Contrary to Plaintiff's suggestion, the Michigan exemption does not favor religions which typically worship indoors over those, like Plaintiff's, which prefer outdoor worship. In fact, albeit in his proposed Free Exercise Clause claim, Plaintiff alleges that Director Gordon's offending order(s) "strictly limit[ed] indoor and outdoor gatherings." (ECF No. 44-1, PageID.1113, ¶ 34.) Yet, Plaintiff's Equal Protection Clause claim seems to complain that the religious worship exemption somehow permitted indoor religious gatherings in churches or synagogues, but not outdoor ones or religious gatherings in other buildings (*see id*., PageID.1113-1114 ¶¶ 37-41); the exemption makes no such distinction. As I pointed out in my earlier report and recommendation, "[n]otably, and contrary to what Plaintiff implies, 'place of worship' is neither limited in the executive orders to churches – or for that matter (though not the focus of his grievances), synagogues, mosques, shrines or temples – nor to venues in which Monotheism is observed." (ECF No. 41, PageID.1062.) By using a broad and

generic word like *place*, the Governor, and subsequently Director Gordon, avoided narrowing the restriction to "houses of worship" or auditoriums and, instead, chose a word that simply means *location or venue*.[8]

Additionally, Plaintiff's Establishment Clause and Equal Protection Clause claims challenge the religious worship exemption's phrase, "[n]either a *place* of religious worship nor its *owner* is subject to penalty . . . for allowing religious worship at such place." (ECF No. 44-1, ¶¶ 29, 30, 41; *June 1, 2021 Gatherings and Face Mask Order* (Paragraph 7(d)) (emphases added).) Plaintiff argues that the State of Michigan "discriminates against religions that do not own property." (ECF No. 51, PageID.1285-1287.) But he has misconstrued the significance of the words "place" and "owner" in the MDHHS religious exemption paragraph. While the Court agrees that "the Plaintiff cannot be required to own land or a building in order to practice his religion[,]" (*id.*, PageID.1285), the phrase "neither a place of religious worship nor its owner" – which was present in both Defendant Whitmer's EO 2020-77 (Paragraph 16) and the June 1, 2021 MDHHS Order (Paragraph 7(d)) (emphases added) – does not require Plaintiff to own land or a building or to utilize indoor space for worship; it merely exempts those who do or *who make their property available* for religious worship. Thus, the farm, park, bar, amphitheater

---

[8] *See* <u>Black's Law Dictionary</u> (10th ed. 2014) ("*Place of…*" [p. 1334] and "*venue*" [p. 1790]– demonstrating that, in a legal context, the word *place* is used as a synonym for location or venue.)

or theater owners who would willingly provide a venue for religious worship, if not for mere consumption of alcohol or entertainment performances, could avail themselves of this protection on the face of the exemption.

Additionally, with respect to his Equal Protection Clause and Free Exercise Clause claims, Plaintiff's inability to perform his own play ("Me Too!") about Dionysius, obtain a tattoo, or "gather[] with his friends in community" for fellowship at a bar with his fellow Pagans (ECF No. 41-4, PageID.1113-1114, ¶¶ 37, 39) does not appear to be appreciably different than Christians' inability to put on a performance of *Godspell* or a Passion Play, Jews' inability to perform *Fiddler on the Roof*, or any other religion's inability to hold a social gathering at a bar for religious fellowship purposes during the height of the pandemic[9] or to obtain a tattoo with religious symbolism from a commercial establishment. Indeed, worshipers in many religions utilize tattoos for religious expression; yet, all were

_____

[9] For instance, a casual Google search shows that Catholics within this District participate in "Theology on Tap" events at bars in the Archdiocese of Detroit, and the Notre Dame Club of Ann Arbor holds an annual Advent Mass and time of fellowship at Conor O'Neill's Irish Pub. (*See* https://www.unleashthegospel.org/event/detroit-catholic-young-adults-theology-on-tap/ and https://annarbor.undclub.org/news/1984, last visited 6/25/21.) The Undersigned is confident that – when not amidst a global pandemic – other religiously-affiliated events occur at bars. In any event, Plaintiff's proposed supplemental complaint does not suggest that other religions were given access to bars during the pandemic, nor does it suggest that the religious worship exemption was disparately applied to bars or that the exemption was actually denied to him.

temporarily prevented from engaging in this intimate, health-regulated practice – in which social distancing is not possible – out of concern for public health and safety. The Governor and/or MDHHS Director's restriction of the tattoo industry was well within the Executive Branch's discretion, as body art is highly regulated. *See* Mich. Comp. Laws 333.13101-13112 ("Body Art Facilities").[10] And while it may be true that some of these activities may have a component of religious

---

[10] Plaintiff also seeks to allege that Robert Gordon's November 15, 2020 order prevented Plaintiff from "attending Yoga classes for his physical and spiritual health in the Samadhi Yoga Studio directly downstairs from his residence[,]" further noting that "[y]oga is a spiritual practice developed by Pagans (Hindus)." (ECF No. 44-1, PageID.1113, ¶ 38.) However, although Hindus may, according to Plaintiff, be fellow Pagans, Plaintiff does not claim to be a Hindu; rather, he claims to be a Druid. (*Id*., PageID.1105-1106, 1115.) And he does not claim that Yoga is a form of worship, let alone one that is specific to Hinduism, Paganism or Druidism, even if it may well have a spiritual component. (*Id*., PageID.1108, 1111, 1113 ¶¶ 11, 24, 34, 38.) In fact, the December 11, 2014 resolution of the United Nations General Assembly – which recognized an International Day of Yoga, and of which this Court takes judicial notice under Fed. R. Evid. 201 – promotes the practice for entirely nonsectarian reasons, namely because the "wider dissemination of information about the benefits of practising yoga would be beneficial for the health of the world population[.]" *See* https://undocs.org/A/RES/69/131 (last visited June 29, 2021). Likewise, the U.N.'s 2021 declaration of the International Day of Yoga recognizes Yoga as an "ancient physical, mental and spiritual practice that originated in India[,]" and as having "universal appeal[.]" (https://www.un.org/en/observances/yoga-day, last visited 6/25/21.) Adherents to the practice of yoga have included varied personalities from many faith traditions, including Prince Charles, the future head of the Church of England. (S. Anand, "India's Pandemic Plight Takes Toll on Yoga Capital," *Wall Street Journal*, June 23, 2021 at A9.) Also, Plaintiff does not claim the inability to practice Yoga, only the inability to do so in a particular studio that happens to be "directly downstairs from his residence." (ECF No. 41-1, PageID.1113 ¶ 38.)

expression, to the extent that they have been limited by Michigan's Covid-related shutdown orders – and even assuming for the moment that the exemption would *not* apply – they were limited across-the-board, *i.e.*, they affected all religions and likewise curtailed the nonreligious uses of these venues.

As the Supreme Court noted within the last month, "laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1876 (June 17, 2021) (*citing Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-82 (1990)). S*ee also Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020 (order) (per curiam) ("[A] generally applicable law that incidentally burdens religious practices usually will be upheld.") (citing *Smith*, 494 US at 878-79); *Beshear*, 981 F.3d at 510 ("Here, religious schools are in the category of 'K-12 schools' because the reasons for suspending in-person instruction apply precisely the same to them. . . . Any burden on plaintiffs' religious practices is 'incidental' and therefore not subject to strict scrutiny.") (internal citation omitted). The Supreme Court explained that a law lacks general applicability where it either "permit[s] the government to grant exemptions based on the circumstances underlying each application" or "prohibits religious conduct while permitting secular conduct that undermines the Government's asserted interests in a similar way." *Fulton*, 141

S.Ct. at 1877. As Justice Barrett separately explained, "[a] long-standing tenet of our free exercise jurisprudence – one that both predates and survives *Smith* – is that a law burdening religious exercise must satisfy strict scrutiny if it gives government officials discretion to grant individualized exemptions." *Id*. at 1883 (Barrett, J., concurring). However, neither the shutdown orders (which Plaintiff does not seek to enjoin) nor the exemptions for religious worship (which he seeks to enjoin) provided for individualized exemptions or prohibit religious conduct while permitting secular conduct of a like kind.

On their face and under the freshest possible jurisprudence on the subject, the portions of the executive orders at issue here are neutral and generally applicable. Given the orders' general applicability and the latitude given to the Executive and Legislative Branches – in the midst of a global pandemic – "'to act in areas fraught with medical and scientific uncertainties,'" *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)), Plaintiff's proposed renewed attack – whether on the closing of bars, theaters, tattoo parlors and yoga studios or on the exemptions from prosecution in connection with places of religious worship or their owners – would be futile. The closure orders did not target religion, even if they may have incidentally burdened it, and the exemptions

clearly aimed at upholding religious freedom – a civil liberty protected within the Bill of Rights – did so without differentiating between religious belief systems.

Rather than challenging the list of places that were closed to the public on equitable grounds – which included theaters, bars, yoga studios and tattoo parlors – Plaintiff's initial and proposed supplemental complaints seek a declaration that "the exemption" violates his constitutional rights, and a permanent injunction "to remove the exemption[,]" even when, on its face, the exemption would appear to uphold Plaintiff's constitutional rights – including for outdoor religious worship – rather than diminish them. (ECF No. 27, PageID.710; ECF No. 44-1, PageID.1114-1115.) In other words, and even ignoring for the moment the mootness of these arguments since the restrictions and exemptions have since been rescinded, Plaintiff in essence argues that, "[i]f I [and for that matter, anyone else] cannot put on a play, go to a bar or visit a yoga studio due to the pandemic, all religious worship in Hindu temples, mosques, synagogues and churches should be subject to criminal prosecution." His proposed supplemental complaint makes no suggestion that he ever actually attempted to do any of these things for any religious purpose, including "leading Pagan seasonal religious rituals." The proposed supplemental complaint only suggests that Plaintiff subjectively believed he was "prevented" from doing so "under penalty of law." (ECF 44-1, PageID.1112-1114, ¶¶ 32-33, 40.) It appears – based upon the declaratory and

injunctive relief prayed for in his formerly operative and proposed supplemental pleadings – that, in Plaintiff's view, unless the Executive Branch *criminalizes* gatherings in places of religious worship in its exercise of authority to limit gatherings in the context of a global pandemic, the Government has violated the Establishment Clause by essentially establishing a state religion.  Plaintiff supplies no authority for this remarkable proposition, and the Court is aware of none.

Relatedly, Plaintiff argues that the public and private venues where Pagan worship takes place do not qualify as "place[s] of religious worship[,]" (*id*., PageID.1285-1286); yet, he offers no authority for this "definition."  In sum, contrary to Plaintiff's position, the Court concludes that the MDHHS religious worship exemption would be found, under either a strict scrutiny standard or – more likely – an applicable lesser standard, to be facially "tailored to include non-conventional Pagan beliefs and practices."  (ECF No. 51, PageID.1286.)  The attack on these provisions would not survive a motion to dismiss.

### 5.    Pleading a constitutional claim

Governor Whitmer also argues that Plaintiff has failed to plead a constitutional claim.  (ECF No. 48, PageID.1253-1254.)  By way of background, and as noted above, the Undersigned's November 23, 2020 report and recommendation considered whether Plaintiff had pleaded a constitutional violation, but noted that it was not necessary to reach this question if the Court

agreed that Plaintiff's claims were not justiciable. (ECF No. 41, PageID.1070-1071.) Still, I noted that, if the Court disagreed with my justiciability conclusion and reached the threshold issue of whether Plaintiff had plausibly pleaded federal constitutional claims upon which relief may be granted, Plaintiff "would have quite a hill to climb." (*Id*., PageID.1070.) Citing multiple cases, I noted that EO 2020-21's religious worship exemption was "facially neutral and likely within the Governor's discretion." (ECF No. 41, PageID.1070.)

The same is true with respect to the instant motion. As noted in the prior section of this order, Plaintiff has not adequately alleged standing for any of his three proposed supplemental claims (Establishment Clause, Equal Protection Clause or Free Exercise Clause). Thus, the Court need not further consider the threshold issue of whether Plaintiff has plausibly pleaded federal constitutional claims upon which relief may be granted.

Nonetheless, if the Court did proceed to this issue, Governor Whitmer appropriately argues that Plaintiff has failed "to plead a constitutional claim." (ECF No. 48, PageID.1253-1254.) At the time Governor Whitmer filed her December 9, 2020 response (ECF No. 48), the then-active MDHHS *Gatherings and Face Mask Order* was the version dated December 7, 2020, Paragraph 10(d) of which stated:

> Neither a place of religious worship nor its owner is subject to penalty
> under this order for allowing religious worship at such place. No

individual is subject to penalty under this order for engaging in
religious worship at a place of religious worship.

(ECF No. 48-2.)  The most recently active, June 1, 2021 *Gatherings and Face
Mask Order* contains a similar provision at Paragraph 7(d), although – as noted
above – the order has since been rescinded.

Here, Governor Whitmer accurately argues that "[t]he penalty exemption for
religious worship remains neutral, permitting all forms of religious worship
regardless of sect, denomination, creed, or otherwise."  (ECF No. 48,
PageID.1253.)  Thus, the Court agrees with Defendant Whitmer that the religious
worship exemption permissibly "alleviat[es] . . . burden on religious exercise . . . ."
(*Id.*)  *See Illinois Republican Party v. Pritzker*, 973 F.3d 760, 769 (7th Cir. 2020)
("all that the Governor did was to limit to a certain degree the burden on religious
exercise that EO43 imposed."), *cert. denied*, No. 20-1081, 2021 WL 1163871
(U.S. Mar. 29, 2021); *Roman Cath. Diocese of Brooklyn,* 141 S. Ct. at 66 ("the
regulations cannot be viewed as neutral because they single out houses of worship
for especially harsh treatment.").  As the Governor aptly pointed out in her
response to Plaintiff's prior objections:

> The Supreme Court has long held that efforts to "alleviate[]
> exceptional government-created burdens on private religious exercise"
> do[] not run afoul of the [Establishment Clause].  *Cutter v. Wilkinson*,
> 544 U.S. 709, 720 (2005); *see also id*. at 713 ("This Court has long
> recognized that the government may . . . accommodate religious
> practices . . . without violating the Establishment Clause.") (internal
> quotations [and external citation] omitted); *Corp. of Presiding Bishop*

*of the Church of Jesus Christ of Latter-[d]ay Saints v. Amos*, 483 U.S.
327, 349 (1987) (O'Connor, J. concurring) (removal of government-
imposed burden on religious [organization] "should [be] perceive[d] .
. . as an accommodation of the exercise of religion rather than as a
Government endorsement of religion."). "[T]here is room for play in
the joints between the Free Exercise and Establishment Clauses,
allowing the government to accommodate religion beyond free
exercise requirements, without offense to the Establishment Clause."
*Cutter*, 544 U.S. at 713 (internal quotations [and external citations]
omitted).  Here, the religious-worship [exemption] does just that—it .
. . accommodates the free exercise of religion without establishing or
adopting any religion's tenets.

(ECF No. 52, PageID.1302-1304.)

### F.  Conclusion

The exemptions from prosecution for places of religious worship and their

owners caused no harm to Plaintiff; if anything, they provided a *protection* to him.

Under the exemptions, he enjoyed the freedom to practice his own religion at any

indoor or outdoor "place of religious worship" without fear of prosecution.

According to his pleadings, he assumed otherwise – *i.e.*, that he (and other Pagans)

"is" or was/were "prevented from" holding outdoor religious gatherings, attending

yoga classes, gathering at "the Nightlight bar . . . [,]" and other activities "under

penalty of law" (ECF No. 44-1, PageID.1112-1114, ¶¶ 32, 37-38, 40) – and

seemingly refrained from certain religious practices on his own volition,

notwithstanding the religious practice/worship exemptions.  Nowhere does he

allege that the Government failed to apply or give him the benefit of the

exemptions.  To the extent he believes that he was prevented from carrying out acts

or expressions of worship because bars, theaters, yoga studios and tattoo parlors were shut down, he has attacked the wrong provisions in the various Covid-related executive or MDHHS orders, choosing to seek the nullification of the exemptions rather than of the restrictions themselves. However, it is not the religious exemptions that prevented him from holding religious celebrations at outdoor venues, putting on religious-themed plays at a theater, getting religious tattoos, practicing yoga in a studio, or meeting fellow Druids at bars; it was, *if anything*, the various shutdown directives that would have impeded these activities, and then only if the express exemptions, which are not alleged to have ever been tested in these instances, were deemed inapplicable. Yet, rather than seek the nullification or enjoinder of these restrictions, he instead has consistently complained in this lawsuit that the directives *were not restrictive enough*, *i.e.*, that places of worship *should* have been closed in order to foreclose the possibility of becoming super-spreaders. (ECF No. 27, ¶ 26; *see also id.*, ¶¶ 27-36, 40.) Similarly, the proposed supplemental Establishment Clause claim mentions protection of "public health." (ECF No. 44-1, ¶ 29.) Plaintiff cannot have it both ways.

The *exemptions* at issue neither established a state religion, nor favored particular religions, nor inhibited Plaintiff's own free expression of genuinely-held religious beliefs. Indeed, the exemptions protected his expression of such beliefs. As the Supreme Court reminded us at the end of this term, "[t]o have Article III

standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *Transunion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *3 (June 25, 2021). This is so, because "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions." *Transunion*, 2021 WL 2599472 at *6. Plaintiff's proposed supplemental complaint still fails to demonstrate standing on the basis of a "concrete, particularized, and actual or imminent" injury. *Id*. His proposed supplemental pleading will not cure the lack of justiciability identified in my prior report and recommendation.

## G. Order

While there are differences between Plaintiff's formerly operative pleading and the proposed supplemental pleading, the differences do not warrant requiring Plaintiff to file a separate lawsuit. Because he cannot pursue even nominal damages claims against government actors in their official capacity, and because the restrictions and exemptions at issue happen to have been recently rescinded, Plaintiff's proposed supplemental challenge(s) is (are) now moot (Section I.D.4.a). Moreover, the proposed supplemental differences are futile, because Plaintiff has not adequately alleged standing (Section I.D.4.b). In fact, Plaintiff's lack of standing and other deficiencies in his pleadings were discussed at length in my

prior report and recommendation. (ECF No. 41.) The proposed supplementation does not cure the threshold problems identified therein, to which reference is again made here. Having reached these conclusions, the Court need not consider the additional threshold issue of whether Plaintiff has plausibly pleaded federal constitutional claims upon which relief may be granted. Accordingly, Plaintiff's November 25, 2020 motion for leave to file a supplemental complaint under Fed. R. Civ. P. 15(d) (ECF No. 44) is **DENIED**.

      **IT IS SO ORDERED.**[11]

Dated: July 12, 2021

                      Anthony P. Patti
                      UNITED STATES MAGISTRATE JUDGE

---

[11] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).